**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **ALLEN HOOD** | ) | No. 3:17-bk-33605-SHB |
| | ) | **Chapter 7** |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| **ARTHUR R. ROONEY,** | ) | |
| **JUST TENNESSEE, LTD., and** | ) | |
| **ABBACAS HOLDINGS, LTD.,** | ) | |
| | ) | |
| **Plaintiffs/Creditors,** | ) | |
| | ) | |
| **vs.** | ) | **Adv. Pro. No. 3:18-ap-03008-SHB** |
| | ) | |
| **ALLEN HOOD,** | ) | |
| | ) | |
| | ) | |
| **Defendant/Debtor.** | ) | |

<u>**RESPONSE OF PLAINTIFFS' TO DEFENDANT/DEBTOR'S
STATEMENT OF UNDISPUTED MATERIAL FACTS**</u>

Come the plaintiffs, by counsel, and respond as follows to object to Defendant's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment [Doc. No. 27] pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, incorporating Fed.R.Civ.Pro. 56, and LR 7056-1 of the Local Rules of the United States Bankruptcy Court for the Eastern Disttrict of Tennessee.

1.      The Plaintiff/Creditor, Arthur R. Rooney ("Rooney"), is the owner, officer, and majority shareholder in the Plaintiff/Creditor, Just Tennessee, Ltd. ("Just Tennessee"). (Complaint

for Determination that Debts are Not Dischargeable (Doc. 21) (hereinafter "Complaint"), at ¶ 1;

Answer to Complaint for Determination that Debts are Not Dischargeable (Doc. 10) (hereinafter

"Answer"), at ¶ 1; Final Decree on Special Master Report in The Douglas Lake Resort Owner's

Association, Inc. v. Destiny of Tennessee, LLC, et al., Case No. 12-CV-117 (Chancery Court for

Jefferson County, Tennessee) [hereinafter "Jefferson County Final Decree"], attached hereto as

Exhibit 1.)

     RESPONSE:   Undisputed.


     2.     Rooney also is the owner, officer, and majority shareholder in the Plaintiff/Creditor,

Abbacas Holdings, Ltd. ("Abbacas Holdings"). (Complaint at ¶ 1; Answer at ¶ 1.)

     RESPONSE:   Undisputed.


     3.     Just Tennessee is a foreign business entity, organized by Rooney under the laws of

the United Kingdom, that is not registered with the Tennessee Secretary of State to transact

business in Tennessee. (Complaint at ¶ 2; Answer at ¶ 2.).

     RESPONSE:   Pursuant to Fed.R.Civ.Pro. 56(c)(2), the plaintiffs object on the grounds that

Defendant has failed to support these facts with admissible evidence.


     4.     Abbacas Holdings also is a foreign business entity, organized by Rooney under the

laws of the United Kingdom, that is not registered with the Tennessee Secretary of State to transact

business in Tennessee. (Complaint at ¶ 3; Answer at ¶ 3.)

     RESPONSE:   Pursuant to Fed.R.Civ.Pro. 56(c)(2), the plaintiffs object on the grounds that

Defendant has failed to support these facts with admissible evidence.

5.      Incred-I-Builders, LLC ("Contractor"), a Tennessee limited liability corporation, is a residential construction business solely owned and operated by Hood. (Complaint at ⁋ 10; Answer at ⁋⁋ 10, 16.)  Contractor is not a defendant in the Jefferson County Case or in this case.

RESPONSE:   Undisputed.


6.      The Douglas Lake Resort Owner's Association, Inc. ("Resort Owners") is the homeowner's association involved with the Lakehouse property in Jefferson County. See Resort Owners Complaint, Exhibit 8.

RESPONSE:   Undisputed.


7.      Donald Parkhurst and wife Sharon Parkhurst were owners of Lot 117 at the Douglas Lake Resort.  See Resort Owners Complaint, Exhibit 8.

RESPONSE:   Undisputed for purposes of the motion for summary judgment.


8.      EquiFirst was a holder of a mortgage on the property.   See Resort Owners Complaint, Exhibit 8.

RESPONSE:   Undisputed for purposes of the motion for summary judgment.


9.      DIPC was alleged to be the owner of Lott 117 at the time Resort Owners filed its Complaint in Jefferson County. See Resort Owners Complaint, Exhibit 8. Except for the fact that they were defendants in the Jefferson County Case they are not related to any of the other parties or the dispute before the court.

RESPONSE:   Undisputed for purposes of the motion for summary judgment.

10.      Hood owned a parcel consisting of 10.59 acres of real property, known as Summit View, in Sevier County, Tennessee ("the Summit View Tract"). (Complaint at ‖ 10; Answer at ‖10. Hood Affidavit, Exhibit 2).

RESPONSE:   Undisputed for purposes of the motion for summary judgment.

11.      He sought to develop the property into a subdivision and construct homes on the lots.  Hood Affidavit, Exhibit 2.

RESPONSE:   Undisputed for purposes of the motion for summary judgment.

12.      On April 5, 2005, Rooney and/or Just Tennessee entered into a contract with Hood wherein Hood appointed Rooney as the exclusive sales agent for the Summit View Project for a period of 24 months.  See Exhibit 3 (the "Initial Summit View Contract").

RESPONSE:   Plaintiffs do not dispute that Exhibit 3 is a valid contract between the named parties. Plaintifffs dispute any characterization inconsistent with the express terms of the contract.

13.      Hood sent Rooney a letter dated January 7, 2006 in order to "spell out the terms and conditions for the Summit View Project agreement."  Hood Affidavit, Exhibit 2 (the "January 7th Letter").

RESPONSE:   Undisputed for purposes of the motion for summary judgment.

14.      Rooney signed the January 7th Letter and returned it to Hood via email. Hood Affidavit, Exhibit 2.  The Initial Summit View Contract  and the and the January 7th Letter, when referred to together will be referred to as "the Summit View Contract").

- 4 -

RESPONSE:   Undisputed.

15.     Under the Initial Summit View Contract Hood retained the right to sell to non-UK buyers. See Exhibit 3 at 2.

RESPONSE:   Plaintiffs do not dispute that Exhibit 3 is a valid contract between the named parties. Plaintifffs dispute any characterization inconsistent with the express terms of the contract.

16.     Under the Initial Summit View Contract Rooney was obligated to bear all of "his own marketing costs without financial assistance from Hood."  See Exhibit 3.

RESPONSE:   Plaintiffs do not dispute that Exhibit 3 is a valid contract between the named parties. Plaintifffs dispute any characterization inconsistent with the express terms of the contract.

17.     Under the Initial Summit View Contract Rooney was authorized to accept "lot holds for buyers for homes on the property."  See Exhibit 3.

RESPONSE:   Plaintiffs do not dispute that Exhibit 3 is a valid contract between the named parties. Plaintifffs dispute any characterization inconsistent with the express terms of the contract.

18.     With the exception of "Lot Compensation" described in Paragraph 8 of the Initial Summit View Contract, the compensation due to Rooney was the difference between retail and net pricing which compensation could "not be itemized on the buyers' closing statement."  See Exhibit 3.

RESPONSE:   Plaintiffs do not dispute that Exhibit 3 is a valid contract between the named parties. Plaintifffs dispute any characterization inconsistent with the express terms of the contract.

19.      The difference between retail pricing and net pricing was not to be disclosed to buyers, prospective buyers, or other outside third parties." See Exhibit 3.

RESPONSE:   Plaintiffs do not dispute that Exhibit 3 is a valid contract between the named parties. Plaintiffs dispute any characterization inconsistent with the express terms of the contract.

20.      Other than the Lot Hold deposit, the Initial Summit View Contract provided that the deposits were required to be held by a title company or attorney's trust account. See Exhibit 3.

RESPONSE:   Plaintiffs do not dispute that Exhibit 3 is a valid contract between the named parties. Plaintiffs dispute any characterization inconsistent with the express terms of the contract.

21.      On January 6, 2006, Hood transferred ownership of the Summit View Tract to Contractor. (Answer at ⁋ 10.)

RESPONSE:   Pursuant to Fed.R.Civ.Pro. 56(c)(2), the plaintiffs object on the grounds that defendant has failed to support these facts with admissible evidence.

22.      Rooney asserts that he later designated Abbacas Holdings to be a party to that contract along with himself and Just Tennessee. (Answer at ⁋⁋ 11-13, 20, 36, 46; Jefferson County Final Decree.)

Response:      Undisputed.

23.     Under most circumstances either Hood or Contractor would secure a construction

loan for the house to be built that was secured by a deed of trust on the lot.  Hood Affidavit, Exhibit

2.

RESPONSE:   Undisputed for purposes of the motion for summary judgment.


24.     At the closing of a sale the proceeds of the sale would be utilized to obtain a release

of the deed of trust on that house.  Hood Affidavit, Exhibit 2.

RESPONSE:   Undisputed for purposes of the motion for summary judgment.


25.     Closings of the sales were from time to time delayed because the deposits that

Rooney had received from the buyer of a specific home did not get transmitted to Hood, Contractor

or the title company.  Hood Affidavit, Exhibit 2.

RESPONSE:   Undisputed for purposes of the motion for summary judgment.


26.     Development of the lots in the Summit View Tract commenced, but the sales of the

developed lots did not meet expectations due in part to the collapse of the residential housing

market in 2008 (Complaint at ₽ 24; Answer at ₽₽ 20, 23-24, 48; Jefferson County Final Decree.)

RESPONSE:   Plaintiffs do not dispute that the development of lots commenced.  Pursuant

to Fed.R.Civ.Pro. 56(c), Plaintiffs object to the balance of this statement on the grounds that it

does not include admissible evidence.

27.     Rooney, David Rooney and Hood met at the Lake House on or about May 17, 2007 to resolve their disagreements over the amounts owed between the parties related to both the Lake House and the Summit View Project.  Hood Affidavit, Exhibit 2.

RESPONSE:   Undisputed.

28.     After a meeting that lasted several hours, Rooney, David Rooney and Hood reached an agreement covering all monies owed and clarifying monies in the future, which agreement was incorporated into a letter agreement dated May 17, 2007 signed by Rooney, David Rooney and Hood.  Exhibit 5.  Hood Affidavit, Exhibit 2.  This agreement shall be referred to as the "Settlement Agreement."

RESPONSE:   Plaintiffs do not dispute that Exhibit 5 is a document executed by the named parties.   Plaintiffs dispute any characterization inconsistent with the express terms of the agreement.

29.     At the time of signing off on the Settlement Agreement there were 14 houses remaining to be closed.  Hood Affidavit, Exhibit 2.

RESPONSE:   Undisputed for purposes of the motion for summary judgment.

30.     The Settlement Agreement provides that IB [referring to Contractor] is owed the sum of $234,394 which was to be repaid by deduction from the next 14 sales at the amount of $16,743.00.  Hood Affidavit, Exhibit 2.  Settlement Agreement, Exhibit 5.

RESPONSE:   Plaintiffs do not dispute that Exhibit 5 is a document executed by the named parties.   Plaintiffs dispute any characterization inconsistent with the express terms of the agreement.

31.    Additionally, the parties agreed that IB [Contractor] was to be paid $30,515 from Bushnell sale and $30,465 from Hanley sale, which amounts were not included in the $234,394 figure.  Hood Affidavit, Exhibit 2.  Settlement Agreement, Exhibit 5.

RESPONSE:   Plaintiffs do not dispute that Exhibit 5 is a document executed by the named parties.   Plaintiffs dispute any characterization inconsistent with the express terms of the agreement.

32.    After the Settlement Agreement was signed, Hood provided what is referred to as "Deal Sheets" for the sale of the homes.  Hood Affidavit, Exhibit 2.

RESPONSE:   Undisputed for purposes of the motion for summary judgment.

33.    The Deal Sheets for Lots 1, 5, 6, 7, 8, 9, 12, 21, 23, and 35,were sent to David Rooney.   David Rooney sent the deal sheets for those sales from his fax machine (01257251583) on December 20, 2007.  See Deal Sheets, Exhibit 6.

RESPONSE:   Undisputed for purposes of the motion for summary judgment

34.    Hood's reconciliation of the remaining 14 deals is set out in the spreadsheet that is attached as Exhibit 7.

RESPONSE:  It is undisputed that Defendant's purported reconciliation is set out in Exhibit 7.

35.    In part, because of the collapse of the real estate market in 2008 and the delays in closing the sales some of the deals did not close. Hood Affidavit, Exhibit 2.

RESPONSE:   Plaintiffs do not dispute that some of the sales did not close.   Pursuant to Fed.R.Civ.Pro. 56(c), Plaintiffs object to the balance of this statement on the grounds that it does not include admissible evidence.

36.    Sevier County Bank foreclosed on one of the lots because Hood was unable to pay the construction loan as it became due. Hood Affidavit, Exhibit 2.

RESPONSE:   Undisputed for purposes of the motion for summary judgment.

37.    On May 23, 2006, Hood incorporated a for-profit Tennessee corporation known as Destiny, Inc. (Complaint at ⁋ 15 & Exhibit B; Answer at ⁋⁋ 14-15.)

RESPONSE:   Undisputed.

38.    Abbacas Holdings was issued a stock certificate for 50 shares of common stock in Destiny, Inc., for which Abbacas Holdings was to pay $325,000.00 out of the future commissions earned by it, or Rooney and Just Tennessee as agents of Abbacas Holdings, pursuant to the terms of the Summit View Contract. (Complaint at ⁋ 15; Answer at ⁋⁋ 3, 14-15;)

- 10 -

RESPONSE:   It is undisputed that Abbacas Holdings was issued a stock certificate for 50 shares of common stock of Destiny, Inc.  Pursuant to Fed.R.Civ.Pro. 56(c)(2), the plaintiffs object to the balance of this statement on the grounds that Defendant has failed to support these facts with admissible evidence.

39.    Hood owned and controlled all other stock in Destiny, Inc. (Complaint at ¶ 15; Answer at ¶¶ 14-15;)

RESPONSE:   Undisputed.

40.    Rooney had no ownership interest in Destiny, Inc. (Complaint at ¶ 15; Answer at ¶¶ 14-15.)

RESPONSE:   Plaintiffs do not dispute that it was Abbacas Holdings which owned shares in Destiny, Inc.  As the sole owner Abbacas Holdings, Arthur Rooney had an indirect ownership interest in Destiny, Inc.

41.    On December 15, 2006, Destiny, Inc. purchased a parcel of real property, consisting of Lot 5 of the Douglas Lake Resort Planned-Unit Development, with an address of 1253 Stetson Lane in Jefferson County, Tennessee, upon which was constructed a large cabin in need of refurbishment (the "Douglas Lake Property" or the "Lakehouse"). (Complaint at ¶ 16 & Exhibit A; Answer at ¶¶ 11, 14, 16; Jefferson County Final Decree.)

RESPONSE:   Undisputed for purposes of the motion for summary judgment.

- 11 -

42.      The entire purchase price of $645,800.00 for the Douglas Lake Property was paid on behalf of Destiny, Inc. through two checks payable from an account owned by Contractor. (Answer at ⁋⁋ 14, 16.)  Hood Affidavit, Exhibit 2.

RESPONSE:   Undisputed for purposes of the motion for summary judgment.

43.      Refurbishment of the Douglas Lake Property later took place, thereby increasing the market value of the property and allowing for it to become income-producing as a rental property. (Complaint at ⁋ 17; Answer at ⁋ 17; Hood Affidavit;)

RESPONSE:   Undisputed for purposes of the motion for summary judgment.

44.      On April 4, 2008, Destiny, Inc. was converted to a limited liability Tennessee corporation known as Destiny of Tennessee, LLC. (Complaint at ⁋ 18 & Exhibit B; Answer at ⁋ 18.)

RESPONSE:   Undisputed.

45.      The Certificate of Conversion evidencing the conversion of Destiny, Inc. to Destiny of Tennessee, LLC is a matter of public record with the Tennessee Secretary of State. (Complaint ⁋ 18 & Exhibit B; Answer at ⁋ 18.)

RESPONSE:   Undisputed for purposes of the motion for summary judgment.

46.      The conversion of Destiny, Inc. to Destiny of Tennessee, LLC did not change the ownership structure of the corporation, just its form. (Answer at ⁋⁋ 18, 20).

RESPONSE:   Disputed.   See Declaration of Arthur Rooney,¶ 5, filed herewith.

47.     The conversion was completed after consultation with Arthur Rooney and attorney Sevierville Doug Yates. Hood Affidavit, Exhibit 2.

RESPONSE:  Disputed.   See Declaration of Arthur Rooney,¶ 5, filed herewith.


48.     On March 4, 2009, Destiny of Tennessee, LLC transferred ownership of the Douglas Lake Property to a South Dakota limited partnership known as Lake Casa Limited Partnership ("Lake Casa LP"). (Complaint at ¶ 20 & Exhibit C; Answer at ¶ 20; Jefferson County Final Decree.)

RESPONSE:  Undisputed.


49.     The quitclaim deed transferring ownership of the Douglas Lake Property to Lake Casa LP was duly recorded on April 4, 2009, in the public records of Jefferson County, Tennessee. (Complaint at ¶ 20 & Exhibit C; Answer at ¶ 20.)

RESPONSE:  Undisputed.


50.     On May 11, 2012, a lawsuit was filed by The Douglas Lake Resort Owners Association, Inc. against Destiny of Tennessee, LLC f/k/a Destiny, Inc., Lake Casa LP, and Abbacus Holdings (and the Parkhurst Defendants) in the Chancery Court for Jefferson County, Tennessee ("Jefferson County Litigation"). (Resort Owners Complaint, Exhibit 8. Answer at ¶ 20)

RESPONSE:  Undisputed.


51.   The Resort Owners Complaint sought to recover upon a judgment it had obtained in 2009 to collect Homeowners Association fees owed by Destiny, Inc. (and its successors),

and Donald Parkhurst and wife, Sharon Parkhurst, along with a claimed successor DPIC and

their lender who were both not related to the disagreements between Rooney, Abbacus and Just

Tennessee.  Resort Owners Complaint (Exhibit 8) at ¶ 5, 6, 7 10 & 11.

RESPONSE:   Undisputed for purposes of the motion for summary judgment.

52.    Abbacas was named as a party because it claimed an interest in the Lakehouse.
Resort Owners Complaint at ¶ 4.

RESPONSE:   Undisputed for purposes of the motion for summary judgment.

53.    Destiny agreed to a consent judgement establishing the amount owed Resort

Owners and setting up a monthly payment of $615.00 per month. See Agreed Judgment Against

Destiny, Inc. and Destiny of Tennessee, LLC, Exhibit 9.

RESPONSE:   Undisputed.

54.    Parkhurst agreed to a consent Judgment establishing their obligation to Resort

Owners. See Agreed Judgment Against Parkhurst, Exhibit 10.

RESPONSE:   Undisputed.

55.    When Abbacas filed its Answer to the Resort Owners Complaint, it included a

Cross-Complaint against Hood and Lake Casa LP seeking damages for unpaid commissions

pursuant to the Summit View Contract, a portion of the rental income generated by the Douglas

Lake Property, and compensation for the transfer of the Douglas Lake Property to Lake Casa LP.

- 14 -

(Abbacas Answer and Third-Party Complaint, Exhibit 11, Answer at 20; Jefferson County Final Decree.)

RESPONSE:   Plaintiffs do not dispute the statements contained in Exhibit 11, the pleading filed in the Jefferson Chancery Court lawsuit. Plaintiffs dispute any characterization inconsistent with the express terms of Exhibit 11.

56.     Abbacas alleged that Hood, Destiny and Destiny Tennessee "entered into a conspiracy and took actions to improperly and unlawfully divest Abbacas of its interest in the [Lake Property], as well as income derived from said property." See Abbacas Answer and Third-Party Complaint, Exhibit 11at ¶ 22.

RESPONSE:   Undisputed.

57.     Abbacus alleged that the "actions of the Cross and Third Party Defendants [Lake Casa and Hood] are willful, intentional, and malicious and should be punished with an award of punitive damages."  See Abbacas Answer and Third-Party Complaint, Exhibit 11 at ¶ 22.

RESPONSE:   Undisputed.

58.     In its prayer for relief Abbacas sought damages caused by the breach of contract in the amount of $900,000, Abbacas Answer and Third-Party Complaint  ¶D, page 15 and punitive damages against Hood in an amount of not less than $100,000.00.  Abbacas Answer and Third-Party Complaint ¶ E, page 15.

RESPONSE:   Undisputed.

59.     Rooney testified that he was entitled to recover $1,747,725 from Hood for commissions he did not receive to which he was entitled.  See Special Master's Report attached to Jefferson County Final Decree, Exhibit 1. See Transcript of Special Master Hearing, Exhibit 16, pages 52-54.

RESPONSE:  Plaintiffs do not dispute the testimony of Arthur Rooney contained in Exhibit 16, which is tgthe trial transcript in the Jefferson Chancery Court case. Plaintiffs dispute any characterization inconsistent with such testimony.

60.     Special Master found that Abbacus Holdings is now in a protected status with the return of the lake house to the original owners. See Special Master's Report attached to Jefferson County Final Decree, Exhibit 1.

RESPONSE:  Plaintiffs do not dispute the accuracy of Exhibit 1, including the report of the Special Master.  Plaintiffs dispute any characterization inconsistent with the express language contained in the report.

61.     Special Master found that Abbacus Holdings is entitled to recover the sum of  $1,747,725 for unpaid commissions less $120,000 for the purchase of the lake house and furniture for a total recovery of $1,627,725. See Special Master's Report attached to Jefferson County Final Decree, Exhibit 1.

RESPONSE:  Plaintiffs do not dispute the accuracy of Exhibit 1, including the report of the Special Master.  Plaintiffs dispute any characterization inconsistent with the express language contained in the report.

62.    Abbacus Holdings stated in its Response/Exceptions to the Special Master Report that "it is in agreement with the findings of the Special Master."   Abbacus Holdings, LTD Response/Exceptions to the Special Master Report, Exhibit 12.

RESPONSE:   Undisputed.


63.    Abbacus Holdings requested relief in addition to the relief awarded by the Special Master which requests were overruled and disallowed by the Court.   Abbacus Holdings, LTD Response/Exceptions to the Special Master Report, Exhibit 12.   Jefferson County Final Decree, Exhibit 1.

RESPONSE:   Undisputed.


64.    Neither Rooney nor Just Tennessee were parties to the Jefferson County Litigation. (Docket Report; Answer at ¶¶ 20, 27, 29, 36; Jefferson County Final Decree.)

RESPONSE:   Undisputed.


65.    Neither Rooney or Just Tennessee filed any pleadings in the Jefferson County Litigation.  See Rule Docket Report, Exhibit 13.

RESPONSE:   Undisputed.


66.    During the Jefferson County Litigation, the state court ordered that ownership of the Douglas Lake Property be transferred back to Destiny, Inc. n/k/a Destiny of Tennessee, LLC. (Answer at ¶ 20; Jefferson County Final Decree.)

RESPONSE:   Undisputed.

67.    The Final Decree in the Jefferson County Litigation, entered on February 24, 2017, determined only that Abbacas Holdings was entitled to recover $1,747,725.00 "for unpaid commissions" pursuant to the Summit View Contract, less $120,000.00 "for the purchase of the lake house and the furniture for a total recovery of $1,627,725.00. (Answer at ¶ 20; Jefferson County Final Decree.)

RESPONSE:  Plaintiffs do not dispute the accuracy of Exhibit 1, including the report of the Special Master.  Plaintiffs dispute any characterization inconsistent with the express language contained in the report or the Final Decree.

68.    Abbacus Holdings sought to enforce the Final Judgment by seeking a sheriffs sale of the real property owned by Lake Case and/or Hood.  See Motion to Confirm Sheriffs sale, Exhibit 14.

RESPONSE:  Undisputed.

69.    Abbacas Holdings obtained an order from the Jefferson County Court to sell the Lake House Property.  See Motion to Confirm Sheriffs sale, Exhibit 14.

RESPONSE:  Undisputed for purposes of the summary judgment motion.

70.    The Jefferson County Chancery court confirmed the Sheriffs sale to the Lakehouse Property to Abbacas by order entered on November 3, 2017.  See Decree Confirming Sheriff's Sale Exhibit 15.

RESPONSE:  Undisputed.

Respectfully submitted,


By:    /s/ Michael S. Kelley
   Michael S. Kelley (BPR#014378)
   KENNERLY, MONTGOMERY & FINLEY, P.C.
   P. O. Box 442
   Knoxville, TN 37901
   (865) 546-7311

*Attorneys for Plaintiffs Arthur Rooney,*
*Just Tennessee, Ltd., and `Abbacus Holdings Ltd.*


## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2019, a copy of the foregoing, Plaintiffs' Response to Defendant's Statement of Undisputed Facts, was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's electronic filing system.

Dated:  November 8, 2019.


By: /s/ Michael S. Kelley
   Michael S. Kelley