## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

ALLEN HOOD

           Debtor

ARTHUR R. ROONEY,
JUST TENNESSEE LTD., and
ABBACAS HOLDINGS, LTD.

           Plaintiffs

           v.

ALLEN HOOD

           Defendant

Case No. 3:17-bk-33605-SHB
Chapter 7

Adv. No. 3:18-ap-03008-SHB

## **M E M O R A N D U M**

**APPEARANCES:**    KENNERLY, MONTGOMERY & FINLEY, P.C.
                Michael S. Kelley, Esq.
                E. Richards Brabham, Esq.
                Post Office Box 442
                Knoxville, Tennessee 37901-0442
                Attorneys for Plaintiffs

                EUBANKS LAW FIRM, P.C.
                Barry W. Eubanks, Esq.
                209 Chilhowee School Road
                Suite 16
                Seymour, Tennessee 37865
                SCOTT LAW GROUP, P.C.
                C. Dan Scott, Esq.
                Post Office Box 547
                Seymour, Tennessee 37865
                Attorneys for Defendant

**SUZANNE H. BAUKNIGHT**
**UNITED STATES BANKRUPTCY JUDGE**

Plaintiffs commenced this adversary proceeding by filing the Complaint for

Determination that Debts Are Not Dischargeable ("Complaint") on March 9, 2018 [Doc. 1],

seeking a nondischargeable judgment against Defendant in the amount of $2,000,000.00, plus

punitive damages of $2,000,000.00, pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), and/or (a)(6).

The Complaint also asserts that "[t]o the extent that Abbacas and Rooney obtained a judgment

[for $1,627,725.00] in the Chancery Court for Jefferson County, Tennessee" on February 24,

2017, Plaintiffs seek a determination that the debt is nondischargeable. [*Id.* at ¶ 29.] Defendant

answered [Doc. 10], denying that Plaintiffs are entitled to any of the relief that they seek and

asking for a judgment against Plaintiffs for attorneys' fees and costs.

Before the Court is the Defendant/Debtor's Motion for Summary Judgment ("Motion")

filed on October 15, 2019 [Doc. 26], which is supported by the statement of undisputed facts as

required by E.D. Tenn. LBR 7056-1(a) and a brief incorporating therein sixteen exhibits. [Docs.

27, 28.] Plaintiffs filed their response opposing the Motion and incorporating therein one

collective exhibit, a response to the statement of undisputed facts, and the Declaration of Arthur

Rooney. [Docs. 32, 33, 34.] The Court has also considered any documents of record in

Defendant's underlying bankruptcy case that have been referenced by either party in either

statement of undisputed material facts. *See* Fed. R. Evid. 201.

## I. UNDISPUTED FACTS[1]

Plaintiff Arthur Rooney ("Rooney") is the owner, officer, and majority shareholder of

Just Tennessee Ltd. ("Just Tennessee") and Abbacas Holdings, Ltd. ("Abbacas"), each of which

is an active business entity with a principal place of business in the United Kingdom. [Docs. 1,

10 at ¶¶ 1-3; 27, 33 at ¶¶ 1-4.] Rooney and Defendant became acquainted in 2000, at which time

---

[1] For the purposes of summary judgment, the following facts are of record or are not disputed by the parties.

Defendant owned Incred-I-Builders ("IIB"), a Tennessee limited liability company that engaged in residential construction. [Docs. 1, 10 at ¶¶ 9-10; Docs. 27, 33 at ¶ 5.]  Rooney, Just Tennessee, and Defendant entered into an Agreement dated April 5, 2005 ("April 5 Agreement"), under which Defendant appointed Rooney as his exclusive agent for the marketing and sale of 10.59 acres of real property in Sevier County, Tennessee ("Summit View Property") that was owned by Defendant. [Docs. 27, 33 at ¶¶ 10-12, Doc. 28-3 at p. 1.]  Under the terms of the April 5 Agreement, Defendant appointed Rooney as exclusive agent with an exclusive right of sale to buyers originating from the United Kingdom for all available lots within the Summit View Property for a period of twenty-four months, after which Defendant could cancel or renew the agreement. [Doc. 28-3 at p. 1.]  Additionally, Defendant reserved the right to sell to non-United Kingdom buyers but was prohibited from listing the Summit View Property with any other agent. [*Id*. at pp. 1-2.]

The April 5 Agreement was supplemented by a letter from Defendant dated January 7, 2006, in which it was expressly detailed that IIB would construct seventeen homes for $4,073,100.00, would sell twenty-three lots within the Summit View Property for $1,860,000.00, and would sell an additional seven lots for $100,000.00 each, with price increases after specific dates ("January 7 Letter"). [Docs. 27, 33 at ¶¶ 13-14; Doc. 28-4.]  The January 7 Letter, which was executed by Rooney on January 9, 2006, and returned to Defendant, also stated that Rooney would retain $7,000.00 of the initial deposit from each sale to be deducted from his "mark-up." [Doc. 28-4.]

Throughout the venture, Defendant or IIB routinely secured the loans for home constructions through deeds of trust against the respective lots, which were paid and released through proceeds received at the individual closings. [Docs. 27, 33 at ¶¶ 23-24.]  At times,

however, closings were delayed because the deposits that Rooney had received from buyers were not transmitted to Defendant, IIB, or the title company. [*Id.* at ¶ 25.] As of May 2007, fourteen houses remained to be closed, as reflected in "Deal Sheets" prepared by Defendant and faxed to Rooney in December 2007 and the reconciliation prepared by Defendant. [*Id.* at ¶¶ 29, 32-34; Docs. 28-6, 28-7.]

To further his and Rooney's joint business purposes, Defendant incorporated Destiny, Inc., a Tennessee corporation, in which both he and Rooney were officers and directors, and in which Abbacas was issued fifty shares of common stock, with Defendant owning all remaining stock. [Docs. 1, 10 at ¶ 15; Docs. 27, 33 at ¶¶ 37-39.] Destiny, Inc. was converted to Destiny of Tennessee, LLC on April 4, 2008. [Docs. 27, 33 at ¶¶ 44-45.]

On December 15, 2006, Destiny, Inc. purchased Lot 5 of the Douglas Lake Resort Planned-Unit Development in Jefferson County, Tennessee ("Douglas Lake Property"), upon which sat a large cabin in need of refurbishment, for $645,800.00. [*Id.* at ¶¶ 41-42.] After refurbishment, the market value of the Douglas Lake Property increased, and it became an income-producing rental property. [*Id.* at ¶ 43.] On April 4, 2008, Destiny, Inc. was converted to a Tennessee limited liability company known as Destiny of Tennessee, LLC. [*Id.* at ¶ 44.] Eleven months later, on March 4, 2009, Destiny of Tennessee, LLC transferred ownership of the Douglas Lake Property to Lake Casa Limited Partnership ("Lake Casa LP"), a South Dakota limited partnership. [*Id.* at ¶¶ 48-49.]

On May 17, 2007, Rooney, Defendant, and David Rooney met at the Douglas Lake Property to resolve disagreements that had arisen concerning both the Summit View Property and the Douglas Lake Property, and the parties memorialized the following:

As of 5-17-07 IB is owed the following by JT:

$234,394

To be amortized over the next 14 closings at the rate of $16,743

This figure is a comprehensive total of all dealings between us, including the following:

1. Lake house
2. Furniture
3. JT advance retained commissions from buyer UK paid deposits on all properties closed to Date.

The $6000 furniture package fees to JT will be paid upon receipt of full balance of furniture payments by IB on all pending packages (except Dickinson, Bushell, Hanley).

Arthur to verify the amounts of any advance retained commissions on pending deals not yet closed.  These retentions are NOT included in the above figures.

Bushell (($30515 net to IB) and Hanley ($30465 net to IB) are excluded from the figures and must be paid separately by JT for the furniture packages.

[Docs. 27, 33 at ¶¶ 27-28; Doc. 28-2 at p. 10.]

On May 11, 2012, the Douglas Lake Resort Owner's Association, Inc. filed a Complaint to Enforce Judgment Liens and Contract Rights, commencing case no. 12-CV-117 in the Jefferson County Chancery Court against Destiny of Tennessee, LLC, fka Destiny, Inc.; Lake Casa Limited Partnership; Abbacas; Donald and Sharon Parkhurst; Equifirst Corporation; and DPIC, Inc. aka DPIC Co., Inc. ("Jefferson County Lawsuit") to recover a judgment it obtained in 2009 for homeowners' fees owed by Destiny, Inc. and the Parkhursts, who owned Lot 117 at the Douglas Lake Resort. [Docs. 27, 33 at ¶¶ 7, 50-51; Doc. 28-8.]  On October 9, 2012, the Jefferson County Clerk and Master entered an Agreed Order of Judgment Against Defendant Destiny of Tennessee, LLC f/k/a Destiny, Inc., and Lake Casa Limited Partnership. [Docs. 27, 33 at ¶ 53; Doc. 28-9.] Similarly, the Clerk and Master entered an Agreed Order of Judgment

Against Defendants Donald Parkhurst, Sharon Parkhurst, and DPIC, Inc. a/k/a DPIC Co., Inc. on

May 2, 2013. [Docs. 27, 33 at ¶ 54; Doc. 28-10.]

Neither Rooney nor Just Tennessee was a party to or filed any pleadings in the Jefferson

County Lawsuit.[2] [Docs. 27, 33 at ¶¶ 64-65.]  Abbacas, which was named as a party because it

claimed an interest in the Douglas Lake Property, filed an Answer that included a cross-

complaint against Destiny of Tennessee, LLC and Lake Casa LP and a third-party complaint

against Defendant (collectively, "Third-Party Complaint"). [Docs. 27, 33 at ¶ 52, 55-58; Doc.

28-11.]  In the Third-Party Complaint, which is at the center of the instant Motion, Abbacas

alleged that Defendant "improperly converted Destiny, Inc. into Destiny of Tennessee, LLC, and

improperly transferred the [Douglas Lake Property]" to Lake Casa LP and that Defendant

"conspired to and has attempted to improperly and unlawfully convey the property of Abbacas to

himself, and has improperly derived or obtained income, including rental income, . . . which [he]

should be required to disgorge." [Doc. 28-11 at p. 15 (¶ C).]  Abbacas sought damages of at least

$900,000.00 for breach of contract and at least $100,000.00 punitive damages for Defendant's

"willful, intentional and malicious [actions]." [*Id.* at pp. 13-14 (¶¶ 22, D-E).]

The matter was heard by the special master, John Fowler, on August 16, 2016, and he

issued his report on November 4, 2016, awarding Abbacas[3] a judgment in the amount of

$1,627,725.00 "for unpaid commissions of [$1,747,725.00] less $120,000[.00] for the purchase

of the [Douglas Lake Property] and the furniture" [Doc. 28-1 at p. 7], which was then confirmed

---

[2] Rooney, however, filed an Affidavit in the Jefferson County Lawsuit on January 31, 2014, averring that he was "the owner, officer and majority shareholder in Abbacas (Antigua Holdings), Ltd." which was an active business entity with its principal place of business located in the United Kingdom. [Doc. 34, Exh. B at ¶¶ 3, 11.]

[3] Notwithstanding that the April 5 Agreement and January 7 Letter do not name Abbacas as a party [Docs. 28-3, 28-4], the parties do not dispute that Rooney designated Abbacas as a party to those documents and that Abbacas owned fifty shares of Destiny, Inc. such that Abbacas was the proper party in the Jefferson County Lawsuit. [Docs. 27, 33 at ¶¶ 22, 38.]

without revision[4] by the Final Decree on Special Master Report ("Judgment") entered by

Chancellor Telford E. Forgety, Jr. on February 24, 2017. [Doc. 28-1 pp. 1-3; *see also generally*

Doc. 28-16 (Transcript of Proceedings before the special master on August 16, 2016).]  Abbacas

sought to enforce the Judgment by seeking a sheriff's sale of the Douglas Lake Property, which

was confirmed by a decree entered by the state court on November 3, 2017. [Docs. 27, 33 at ¶¶

68-70; 28-14; 28-15.]

Defendant filed the Voluntary Petition commencing his Chapter 7 bankruptcy case on

December 1, 2017, and this adversary proceeding was timely filed on March 9, 2018.  Defendant

now seeks summary judgment in his favor, arguing that the statute of limitations bars any action

by Plaintiffs against Defendant based on the parties' dealings concerning the Summit View and

Douglas Lake Properties.  Defendant also argues that res judicata and/or collateral estoppel bar

Plaintiffs from litigating any elements of fraud based on the Judgment entered in the Jefferson

County Chancery Court.

## II.  ANALYSIS

### A.  Rule 56 – Standard for Summary Judgment

Federal Rule of Civil Procedure 56, which is applicable to adversary proceedings by

virtue of Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that "[t]he court shall

grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

---

[4] In its Response/Exceptions to Special Master Report filed on December 8, 2016, Abbacas stated that it was in agreement with the findings of the special master but also asked the Chancellor to order the following as part of the judgment:  (1) apportionment of the property taxes between the parties and allowance of a setoff in favor of Abbacas for funds it had paid for property taxes; (2) apportionment of the costs for the Receiver and the Receiver's counsel (totaling $37,925.59) with allowance of a setoff in favor of Abbacas for funds it had paid for those fees; (3) damages in the amount of $47,500.00 to replace furniture at the Douglas Lake Property; (4) $1,754,792.00 for lost rental income from the Douglas Lake Property; (5) payment of interest on all damages awarded; (6) an accounting of payments made to Douglas Lake Resort Owner's Association, Inc.; and (7) payment of all attorneys' fees and expenses incurred by Abbacas. [Doc. 28-12 at pp. 1-2.]  The Chancellor declined to accept any of the requested exceptions. [Doc. 27, 33 at ¶¶ 62-63,]

and the movant is entitled to judgment as a matter of law[,]" utilizing the procedures defined in

subsections (c)(1) through (c)(4).    When deciding a summary judgment motion, the Court does

not weigh the evidence to determine the truth of the matter asserted but simply determines whether

a genuine issue for trial exists, and "[o]nly disputes over facts that might affect the outcome of the

suit under the governing law will properly preclude the entry of summary judgment." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

As movant, Defendant bears the burden of proving that the record presented to the Court

establishes the lack of a genuine dispute of material fact such that he is entitled to judgment as a

matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Owens Corning v. Nat'l*

*Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001).    "A genuine dispute of material fact exists

when 'there is sufficient evidence favoring the nonmoving party for a [fact-finder] to return a

verdict for that party.'" *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (quoting

*Anderson*, 477 U.S. at 249).    "[The] party seeking summary judgment always bears the initial

responsibility of informing the district court of the basis for its motion[,]" *Celotex Corp.*, 477

U.S. at 323, and "[a]s the party moving for summary judgment, Defendant[] bear[s] the burden

of showing the absence of a genuine issue of material fact as to at least one essential element of

Plaintiff[s'] claim[s]." *Laster*, 746 F.3d at 726.

Once the initial burden of proof is met, the burden shifts to the nonmoving party to prove

that there are genuine disputes of material fact for trial, but reliance solely on allegations or

denials contained in the pleadings is insufficient because a "mere scintilla of evidence in support

of the nonmoving party will not be sufficient." *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th

Cir. 2006); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . .

citing to particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made

for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed.

R. Civ. P. 56(c)(1)(A).   The Court views the facts and all resulting inferences in a light most

favorable to Plaintiffs and decide whether "the evidence presents a sufficient disagreement to

require submission to a [fact-finder] or whether it is so one-sided that one party must prevail as a

matter of law." *Anderson*, 477 U.S. at 243.   Summary judgment is appropriate only if the fact-

finder could not find for the non-moving party based on the "the record taken as a whole."

*Matsushita*, 475 U.S. at 587.

## B.  Statute of Limitations

Defendant first argues that any claims against him by Plaintiffs falling outside the scope

of the Judgment are barred by Tennessee Code Annotated § 28-3-105[5] or Tennessee Code

Annotated § 28-3-109(a)(3).[6] [Doc. 28 at pp. 3-11.]  Plaintiffs respond that "Defendant is

correct.  Given the dates when the causes of action accrued, any applicable statute of limitations

would bar any claim outside the claim embodied in the Judgment." [Doc. 32 at p. 7.]  Plaintiffs

argue, however, that they are not asserting any claims "separate from or in addition to the claims

embodied in the Judgment" and that they are instead seeking to "present evidence at trial that the

[J]udgment of $1,627,725[.00] is nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (4), or (6)

[and because they] are not asserting claims outside of the Judgment, any argument based upon

---

[5] Section 28-3-105 establishes a three-year statute of limitations for tort actions, including claims of fraud. *See Harvest Corp. v. Ernst & Whinney*, 610 S.W.2d 727, 729-30 (Tenn. Ct. App. 1980) ("[S]uits for fraud, deceit or conspiracy, whether they arise incident to a contract or not are actions in tort and must be governed by the applicable tort statute of limitations.").

[6] Section 28-3-109(a)(3) establishes a six-year limitations period for breach of contract.

the running of a statute of limitations is irrelevant." [*Id.*]  The Court disagrees with Plaintiffs'

assertion that Defendants' argument based on the statute of limitations is irrelevant.

Defendant correctly notes that Plaintiffs' entitlement to a determination of

nondischargeability against Defendant requires their entitlement to a right to payment under state

law, as discussed by the Supreme Court:

> Section 502(b)(1) disallows any claim that is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." This provision is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy. *See* 4 Collier ¶ 502.03[2] [b], at 502–22 (explaining that § 502(b)(1) is generally understood to "make available to the trustee any defense" available to the debtor "under applicable nonbankruptcy law" — i.e., any defense that the debtor "could have interposed, absent bankruptcy, in a suit on the [same substantive] claim by the creditor").

> This reading of § 502(b)(1) is consistent not only with the plain statutory text, but also with the settled principle that "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000). That principle requires bankruptcy courts to consult state law in determining the validity of most claims. *See ibid*.

> Indeed, we have long recognized that the "'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having 'generally left the determination of property rights in the assets of a bankrupt's estate to state law.'" *Ibid*. (quoting *Butner v. United States*, 440 U.S. 48, 57, 54 (1979); citation omitted). Accordingly, when the Bankruptcy Code uses the word "claim" — which the Code itself defines as a "right to payment," 11 U.S.C. § 101(5)(A) — it is usually referring to a right to payment recognized under state law. As we stated in *Butner*, "[p]roperty interests are created and defined by state law," and "[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." 440 U.S. at 55; *accord Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161 (1946) ("What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law").

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec,*, 549 U.S. 443, 450-51 (2007).  Defendant is also correct that "[e]ach of the Plaintiffs must establish that they each hold a claim against Hood." [Doc. 28 at p. 5.]

Indisputably, Rooney and Just Tennessee were not parties to the Jefferson County Lawsuit; neither filed any pleadings in the lawsuit; and neither is listed as a party in the special master's report or Judgment. [Docs. 27, 33 at ¶¶ 64-65; 28-1.]  Although Rooney testified before the special master and filed an affidavit in the Jefferson County Lawsuit, he did so in his capacity as owner of Abbacas, but not with respect to himself individually. [*See* Docs. 28-16 at pp. 34-35; 34 at pp. 2 (¶ 2), 13 (¶¶ 3, 11).]

Thus, Rooney and Just Tennessee, who were not parties to the Jefferson County Lawsuit, are barred from asserting claims against Defendant through this adversary proceeding that they cannot assert in a Tennessee state court because those claims accrued outside the relevant limitations periods.  Accordingly, as it relates to Rooney and Just Tennessee, Defendant's Motion will be granted as a matter of law, and the Court will enter summary judgment in his favor dismissing the adversary proceeding as to Rooney and Just Tennessee.

## C.  Res Judicata and Collateral Estoppel

Defendant also asserts that Plaintiffs are precluded from prosecuting this adversary proceeding either by res judicata or collateral estoppel, arguing that the claims raised here are the same as those raised – or that should have been raised – in the Jefferson County Lawsuit.  As explained below, res judicata does not apply to this proceeding.  Further, after a careful review of the record, the Court concludes that fraud was not raised in the Jefferson County Lawsuit so that the doctrine of collateral estoppel does not bar Abbacas from seeking a determination that the Judgment is nondischargeable.

Res judicata, of which collateral estoppel (or issue preclusion) is a branch, derives from the requirement that "judicial proceedings of any court of any state . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738.  In other words, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *see also Montana v. United States*, 440 U.S. 147, 153 (1979) ("[O]nce an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.").

In contrast to pure res judicata, or claim preclusion, "absent an exception to § 1738, state law determines at least the issue preclusive effect of a prior state judgment in a subsequent action involving a claim within the exclusive jurisdiction of the federal courts." *Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 381 (1985).  That is, "collateral estoppel precludes relitigation of *factual* issues that were actually and necessarily determined in the prior action." *Trost v. Trost (In re Trost)*, 735 F. App'x 875, 879 (6th Cir. 2018) (citing *Trost v. Trost (In re Trost)*, 510 B.R. 140, 152 (Bankr. W.D. Mich. 2014) (citing *Montana v. United States*, 440 U.S. at 153)).

As explained by the Sixth Circuit decades ago:

> The determination whether or not a certain debt is dischargeable is a legal conclusion based upon the facts in the case.  The bankruptcy court has the exclusive jurisdiction to make that legal conclusion.  It must apply the statute to the facts and decide to discharge or not.  Therefore, res judicata does not apply to prevent litigation of every issue which might have been covered in the state court proceeding on the debt.  However, that Congress intended the bankruptcy court to determine the final result [of] dischargeability or not does not require the bankruptcy court to redetermine all the underlying facts.  As the Court held in

> *Brown* [*v. Felsen*], where the facts necessary for a dischargeability determination were not necessary to the determination in the prior judgment, the parties should not be bound or else the parties would always have to anticipate future bankruptcy proceedings and the state courts would be deciding facts not necessary to the state proceedings but only relevant to a possible future bankruptcy proceeding.  In effect, state courts would then be deciding issues directly concerning dischargeability, contrary to congressional intent.  However, where the factual issues necessary for [a] dischargeability determination were also necessary to the state court determination, the parties would not have to anticipate the bankruptcy proceedings and the state courts would not be determining issues irrelevant to the state proceedings.

*Spilman v. Harley*, 656 F.2d 224, 227-28 (6th Cir. 1981).

The Sixth Circuit recently reiterated that "[w]hen [28 U.S.C.] § 1738 applies to a state court decision, both issue preclusion [collateral estoppel] and claim preclusion [res judicata] apply." *West v. Parker*, 783 F. App'x 506, 511 (6th Cir. 2019) (alterations in original).  Although "[r]es judicata, at least in the Sixth Circuit, incorporates both issue and claim preclusion," *Wohleber v. Skurko (In re Wohleber)*, 596 B.R. 554, 566 n.11 (B.A.P. 6th Cir. 2019), "[t]he doctrine of collateral estoppel or issue preclusion is a narrower concept than claim preclusion: 'Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit.'" *Indirect Purchaser Class v. Andrews (In re Andrews)*, No. 18-31345-dof, Adv. No. 18-3072-dof, 2019 WL 3361226, at *4 (Bankr. E.D. Mich. July 25, 2019) (quoting *Jennings v. Bodrick (In re Bodrick)*, 534 B.R 738, 743 (Bankr. S.D. Ohio 2015)).

As held by the Supreme Court in *Brown v. Felsen*, 442 U.S. 127, 136-37 (1979), because federal courts have exclusive jurisdiction over actions to determine nondischargeability, pure res judicata (or *claim* preclusion) does not apply in § 523(a)(2), (a)(4), or (a)(6) proceedings even though "the prior determination regarding the existence and amount of the debt will be entitled to preclusive effect." *Bruinsma v. Wigger (In re Wigger)*, 595 B.R. 236, 249 (Bankr. W.D. Mich.

2018).  The Supreme Court also decided that issue preclusion – or collateral estoppel – does

apply in dischargeability actions. *See Grogan v. Garner*, 498 U.S. 279, 284-85 (1991) (noting

that when the standard of proof is the same under nonbankruptcy law adjudicated in state court

and bankruptcy law in a dischargeability case, collateral estoppel applies).

> [The collateral estoppel] doctrine holds that "[w]hen an issue of ultimate fact has
> been determined by a valid judgment, that issue cannot be again litigated between
> the same parties." Black's Law Dictionary 260 (6th ed. 1990). "The purposes of
> collateral estoppel are to shield litigants (and the judicial system) from the burden
> of re-litigating identical issues and to avoid inconsistent results."

*NCM Enters. Sand & Stone, Ltd. v. Earnest (In re Earnest)*, No. 11-36044, Adv. No. 12-3040,

2013 WL 795399, at *3 (Bankr. N.D. Ohio Mar. 1, 2013) (quoting *Gilbert v. Ferry,* 413 F.3d

578, 580 (6th Cir. 2005)).

Collateral estoppel "'promotes finality, conserves judicial resources, and prevents

inconsistent decisions,' by barring 'the same parties or their privies from relitigating in a later

proceeding legal or factual issues that were actually raised and necessarily determined in an

earlier proceeding.'" *Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 107 (Tenn. 2016) (citations

omitted).

> Collateral estoppel is applied to encourage the parties to present their best
> arguments on the issues in question in the first instance and thereby save judicial
> time.  There is no reason to suppose that parties will not vigorously present their
> case on issues necessary to the state court proceeding or that the bankruptcy court
> will be any more fair or accurate than the state court in the determination of the
> facts.  Thus, there is no reason to allow relitigation of facts previously litigated
> which were necessary to the outcome of that prior litigation.  This Court holds that
> where all the requirements of collateral estoppel are met, collateral estoppel should
> preclude relitigation of factual issues.

*Spilman*, 656 F.2d at 228; *see also Booth v. Kirk*, 381 S.W.2d 312, 315 (Tenn. Ct. App. 1963)

("[M]aterial facts or questions, which were in issue in a former action, and were there admitted

or judicially determined, are conclusively settled by a judgment rendered therein, and . . . such

facts or questions become res judicata and may not again be litigated in a subsequent action

between the same parties." (citation omitted)).

The question that federal courts must ask is whether a state court would give preclusive

effect to a judgment; if so, the federal court must follow suit. *See Migra*, 465 U.S. at 81. Under

Tennessee law, collateral estoppel includes five elements:

> (1) that the issue to be precluded is identical to an issue decided in an earlier
> proceeding, (2) that the issue to be precluded was actually raised, litigated, and
> decided on the merits in the earlier proceeding [and was necessary to the judgment],
> (3) that the judgment in the earlier proceeding has become final, (4) that the party
> against whom collateral estoppel is asserted was a party or is in privity with a party
> to the earlier proceeding, and (5) that the party against whom collateral estoppel is
> asserted had a full and fair opportunity in the earlier proceeding to contest the issue
> now sought to be precluded.

*Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009); *see also Bowen*, 502 S.W.3d at 106 (stating

that whether collateral estoppel applies is a question of law so that "summary judgment is an

appropriate vehicle for resolving the issue"). Here, the Final Decree is a final order, and

Abbacas and Defendant were both parties to the Jefferson County Lawsuit, thus meeting the

third and fourth elements of collateral estoppel under Tennessee law. Thus, the Court will

review the other elements of collateral estoppel in light of the proof required to show

nondischargeability under § 523(a)(2), (a)(4), and (a)(6).

### 1. Nondischargeability Under § 523(a)(2)

Under § 523(a)(2)(A), an individual is not discharged from any debt "for money,

property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by . .

. false pretenses, a false representation, or actual fraud, other than a statement respecting the

debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). "The term 'actual fraud'

in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be

effected without a false representation." *Husky Int'l. Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016).

To meet the burden of proof required under § 523(a)(2)(A), Abbacas must prove that Defendant obtained money or property from or belonging to Abbacas through false pretenses and/or material misrepresentations that Defendant knew were false or that he made with gross recklessness or through actual fraud; that Defendant intended to deceive Abbacas when any such false pretenses and/or misrepresentations and/or fraud occurred ; that Abbacas justifiably relied on Defendant's false pretenses and/or representations and/or fraudulent conduct; and that its reliance was the proximate cause of the losses incurred by Abbacas. *See, e.g., Lansden v. Jones (In re Jones)*, 585 B.R. 465, 502 (Bankr. E.D. Tenn. 2018).

### 2. *Nondischargeability Under § 523(a)(4)*

Nondischargeability under § 523(a)(4) requires a showing that the debt was incurred by embezzlement, larceny, or fraud or defalcation while acting in a fiduciary capacity.  Within the scope of § 523(a)(4), embezzlement is "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996) (citation omitted).  Larceny is also the fraudulent misappropriation of funds; however, it differs from embezzlement because possession of the property was never lawful. *See First Nat'l Bank v. Simerlein (In re Simerlein)*, 497 B.R. 525, 537 (Bankr. E.D. Tenn. 2013).  Finally, fraud or defalcation while acting in a fiduciary capacity encompasses both embezzlement and larceny, as well as the failure to properly account for any funds, but may only be the basis for a nondischargeable debt if the plaintiff proves "(1) a pre-existing fiduciary relationship; (2) breach of that relationship; and (3) resulting loss." *Patel v. Shamrock Floorcovering Servs., Inc. (In re Patel)*, 565 F.3d 963, 968 (6th Cir.

2009).  This defalcation prong "includes a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase[:] . . . one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 269 (2013).  Also, within the Sixth Circuit, a fiduciary relationship is found only in "those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *R.E. Am., Inc. v. Garver (In re Garver)*, 116 F.3d 176, 180 (6th Cir. 1997).

### 3.  Nondischargeability Under 11 U.S.C. § 523(a)(6)

To prevail under § 523(a)(6), Abbacas must prove (1) the existence of "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury," *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998), and (2) that Defendant either desired to cause injury or believed with "substantial certainty" that injury would occur. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999) (citing Restatement (Second) of Torts § 8A, at 15 (Am. Law Inst. 1964)).  Under Sixth Circuit authority, "unless 'the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Id*. at 464 (citations omitted); *see also Guthrie v. Kokenge (In re Kokenge)*, 279 B.R. 541, 543 (Bankr. E.D. Tenn. 2002).  "That a reasonable debtor 'should have known' that his conduct risked injury to others is simply insufficient. Instead, the debtor must 'will or desire harm, or believe injury is substantially certain to occur as a result of his behavior.'" *In re Kokenge*, 279 B.R. at 543 (quoting *In re Markowitz*, 190 F.3d at 465 n.10).

### 4. Application of the Doctrine of Collateral Estoppel to 11 U.S.C. § 523 Claims

Each of the foregoing subsections of § 523(a) require proof that Defendant engaged in fraud. Accordingly, in order for collateral estoppel to preclude Abbacas's claims under any of the subsections, the parties to the Jefferson County Lawsuit must have actually raised and litigated the issue of fraud, with Abbacas having had a full and fair opportunity to contest the issues, and the special master's report must have been decided on the merits of such issue. Because fraud was not actually raised, litigated, and decided in the Jefferson County Lawsuit, the issues raised in this adversary proceeding are not identical to those raised before the state court, and collateral estoppel does not bar litigation of Abbacas's claims.

The Tennessee Supreme Court addressed what it means for an issue to be "actually litigated":

> The requirement that an issue be "actually litigated" does not imply that the issue must have been litigated in a full evidentiary and adversarial trial. An issue need not be thoroughly litigated in order to be "actually litigated." The requirement that an issue be "actually litigated" is generally satisfied if the issue was properly raised by the pleadings or otherwise placed in issue and was actually determined in the prior proceeding.

*Mullins*, 294 S.W.3d at 536 (citations omitted). In Tennessee, "the circumstances concerning fraud . . . shall be stated with particularity[, although m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally." Tenn. R. Civ. P. 9.02. As further explained by the Advisory Commission Comments to Rule 9.02, "[t]he requirement in Rule 9.02 . . . is not intended to require lengthy recital of detail. Rather, the Rule means only that general allegations of fraud . . . are insufficient; the pleader is required to particularize, but by the 'short and plain' statement required by Rule 8.01."

The Court, thus, looks first to the operative state-court pleading. The Third-Party Complaint filed by Abbacas against Defendant alleges only that (1) Defendant improperly

merged Destiny, Inc. into Destiny of Tennessee, LLC; (2) improperly transferred the Douglas

Lake Property to Lake Casa; and (3) Defendant breached his contract with Abbacas. [Doc. 28-

11.]  As a remedy to those actions, Abbacas sought judicial dissolution of the corporate merger;

avoidance of the transfer with title quieted in favor of and returned to Abbacas; damages for

breach of contract; punitive damages; and costs, expenses, fees, and attorneys' fees. [*Id.* at pp.

14-15 (¶¶ C-H).]  Specifically, the Third-Party Complaint states that Defendant and the Destiny

entities "entered into a conspiracy and took actions to improperly and unlawfully divest Abbacas

of its interest in the subject property" in violation of the Tennessee Code Annotated § 48-11-101

(the Tennessee Business Corporation Act). [*Id.* at pp. 12-13 (¶ 18).]  As it could potentially

allege fraud, the Third-Party Complaint states that Defendant "conspired to and has attempted to

improperly and unlawfully convey the property of Abbacas to himself" and that Defendant's

actions were "willful, intentional and malicious and should be punished with an award of

punitive damages." [*Id.* at pp. 13-14 (¶¶ 19, 22).]  Such allegations, however, could also apply to

the enumerated claims.

Indeed, the word "fraud" cannot be found either in Third-Party Complaint or the 130-

page transcript of the proceedings held before the special master on August 16, 2016 [*see* Doc.

28-11]; nor does the special master mention fraud in his report, which defines the issues between

Abbacas and Hood as "primarily relat[ing] to the claim of Destiny, Inc. [*sic*] that it still owed a

substantial sum of sales commissions. Additional [*sic*] Destiny Inc. [*sic*] is seeking the return of

its share of the [lake] house." [Doc. 28-1 at p. 4.]  His conclusion in resolution of the issues is

simply "that Abbacus [*sic*] Holdings is now in a protected status with the return of the lake house

to the original owners" and Abbacus [*sic*] Holdings Ltd. is entitled to recover the sum of

$1,747,725 for unpaid commissions less $120,000 for the purchase of the lake house and the furniture for a total recovery of $1,627,725." [*Id*. at p. 7.]

Thus, this Court concludes that the issue of fraud was not raised by Abbacas in its Third-Party Complaint and was not in any way necessary to the report of the special master, as adopted by the Final Decree. Because fraud was not pled or actually litigated, collateral estoppel does not apply to bar Abbacas's claims under § 523.

## IV. CONCLUSION

Defendant correctly argues that, based on the respective Tennessee statutes of limitations (either Tennessee Code Annotated § 28-3-105 or § 28-3-109), because they were not parties to the Jefferson County Lawsuit and are not holders of the Judgment awarded through the Final Decree, Rooney and Just Tennessee do not hold a collectible debt against Defendant such that they cannot seek a judgment against him in this adversary proceeding, and he is entitled to summary judgment dismissing them from the Complaint. As for his arguments concerning res judicata and collateral estoppel, the determination of dischargeability is not within the province of a state court and claim preclusion does not apply in § 523(a)(2), (4), or (6) proceedings. As such, Defendant's argument that Abbacas's claims must be dismissed under the doctrine of claim preclusion is without merit. Additionally, because the issue of fraud was not raised or litigated in the Jefferson County Lawsuit, the doctrine of issue preclusion (i.e., collateral estoppel) also is inapplicable. Thus, under the doctrines of full faith and credit intertwined with res judicata – incorporating therein both claim and issue preclusion – Abbacas is not precluded from litigating the factual issue of fraud before this Court, and the Court finds that there is a genuine issue of material fact concerning the issue of fraud and whether the Judgment[7] held by Abbacas against

---

[7] To the extent that the Complaint seeks to assert causes of action other than for a determination that the Judgment is nondischargeable, such causes of action and damages requested in connection to such claims (i.e., damages over

Defendant should be nondischargeable under § 523(a)(2), (4), or (6).  Accordingly, summary

judgment will be granted in part and denied in part.  An Order consistent with this Memorandum

will be entered.

FILED:  December 23, 2019

BY THE COURT

*/s/ Suzanne H. Bauknight*

SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE

---

$1,627,725.00, plus punitive damages of $2,000,000.00) will be dismissed as a matter of law.  That is, the only claim
that will be tried is Abbacas's claim that the Judgment is nondischargeable under 11 U.S.C. § 523(a)(2), (a)(4), and/or
(a)(6), and any recovery by Abbacas in this proceeding is limited to the amount of the Judgment.